Irving Kirschenbaum, J.
This is an article 78 proceeding for a judgment annulling the order and opinion of respondent Commissioner of the Department of Rent and Housing Maintenance, dated April 27, 1977, denying petitioner landlord of partly rent controlled residential premises located at 2395 Grand Avenue, Bronx, a Maximum Base Rent (MBR) increase for the 14-month period between January 1, 1976 and February 28, 1977.
At issue are the provisions of section Y51-5.0 of the New York City Administrative Code (as amd by Local Laws, 1970, No. 30 of City of New York), authorizing (1) a recalculation of the MBR every two years to cover various cost factors in operating and maintaining rent controlled apartments; and (2) the collection of an annual rental increase of !Vz% to the extent such increase does not exceed the most recently established MBR.
The challenged determination was based on petitioner’s alleged failure to comply with one of the three requisites set forth in section Y51-5.0 (subd h, par [6]) of the code for obtaining an MBR increase, i.e., that the landlord has (1) "cleared, corrected or abated”, by June 30, 1976, at least 80% of all nonrent "impairing violations” on record with the Building Department as of January 1, 1976; (2) removed by June 30, 1976, all "rent impairing violations” (as defined in section 302-a of the Multiple Dwelling Law); and (3) certified that all essential services were complied with by petitioner.
According to respondent, two of the nine violations on record, as of January 1, 1976, had not been removed by the cut-off date (June 30, 1976) but rather, were not corrected until August 25, 1976, thereby delaying the effective date of the 1976/1977 MBR increase until six months thereafter. Petitioner contends, on the other hand, that he was improperly charged with the subject violations (a concealed ceiling leak and an unpainted ceiling in apartment 4C) for the reason *575 that they constitute "new violations” arising after January 1, 1976.
If the question as to whether the two violations existed for a minimum period of six months prior to July 1, 1976, were the sole issue in this proceeding, there would appear to be a sufficient rational basis in the record to preclude the court from substituting its judgment for that of respondent, the agency empowered by law to make such administrative decisions based on first-hand inspections of the premises and on its expertise in the housing field. However, in the court’s view, respondent has acted arbitrarily in refusing to consider the correction of seven of nine violations as having substantially complied with the spirit, if not the exact letter, of the governing statutes, which propose to afford landlords with financial incentives to upgrade their properties on condition that all tenants are provided with well-maintained living quarters.
Concededly, it is a matter of simple arithmetic to ascertain that seven is only 77%%, not 80%, of nine. Nevertheless, it is equally simple to calculate that the abatement of eight of the nine subject violations required by respondent for full compliance would amount to 88%%. This, under the circumstances, is an unreasonable rate of compliance to demand of petitioner.
Respondent’s determination is arbitrary and capricious in that it is clearly based on a rigid and unjustified interpretation of the MBR statute. Accordingly, the application is granted, respondent’s order is vacated and the matter is remanded to respondent for further proceedings not inconsistent with this decision.